James R. SPEIGHT, Appellant,

v.

UNITED STATES, Appellee.

No. 90–1313.

District of Columbia Court of Appeals.

Argued Oct. 16, 1991.
Decided Nov. 27, 1991.

---

Sandra G. Roland, Public Defender Service, with whom James Klein and Elizabeth Taylor, Public Defender Service, were on the brief, for appellant.

Robert A. De La Cruz, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas C. Black, and Linda I. Marks, Asst. U.S. Attys., were on the brief, for appellee.

· Before FERREN, FARRELL, and KING, Associate Judges.

KING, Associate Judge:

Appellant seeks reversal of his conviction of possession with intent to distribute cocaine in violation of D.C.Code § 33–541(a)(1) (1988 Repl.). He challenges the sufficiency of the evidence supporting his conviction, and contends the trial court erred in not granting him a new trial based on the alleged bias of a juror. On this record, we find insufficient evidence to sustain appellant's conviction. Therefore, we reverse.[1]

## I.

The evidence presented at trial revealed that two police officers, Morgan and Bailey, gained entry to an apartment when the tenant, Ralph Glascow, opened the door. They observed a woman, later identified as Carolyn Glascow, the daughter of the tenant, sitting on the arm of a couch in the living room. As they entered the room, she arose from the couch and ran into the bathroom. Appellant and another individual, later identified as Gregory Smith, were standing a few feet in front of the couch and approximately five to six feet from where Carolyn Glascow had been sitting.

On a table behind the couch, Morgan observed what appeared to be drug paraphernalia. He investigated the items and found a cup covered with foil and a single zip-lock bag containing a rock of what was later determined to be cocaine. Morgan then observed a clear plastic bag lying on top of the rear portion of a seat cushion of the couch where Carolyn Glascow had been sitting. The bag was "wrapped up" and was on the cushion closest to the front door. The bag had not been visible to the officers when they entered because it was hidden by the arm of the couch. Inside the plastic bag were twenty-seven zip-lock bags each of which contained a small rock of what was later determined to be cocaine. Morgan also discovered a pouch containing approximately seven hundred dollars wedged between two cushions of the couch.

At this point, Carolyn Glascow came out of the bathroom. Morgan then entered it and discovered, on the toilet tank, a small pharmaceutical bottle which had been converted into what appeared to be a smoking device. Officer Morgan then heard noise coming from the bedroom and directed Officer Bailey to investigate the source of the noise. Bailey went into the bedroom and found a second woman, Lisa Green. He also discovered hanging from the bedroom door two bags containing eighty zip-lock bags of rocks, later determined to be cocaine, and approximately $6,000. The money was folded in bundles that were held together by rubber bands. Bailey also discovered three more zip-lock bags containing rocks: one under the bed, one on top of the bed, and one on the window sill. Finally, he discovered another smoking device. All five individuals in the apartment were arrested. When appellant was asked his name, he gave an alias, Antonio Johnson.

---

[1] Because we reverse on the basis of insufficient evidence, we do not reach appellant's second contention.

Appellant was charged with possession with intent to distribute cocaine (the twenty-seven zip-lock bags recovered from the couch and the single rock found on the table behind the couch), and possession of drug paraphernalia (the apparatus recovered from the table behind the couch). He was tried jointly with Gregory Smith and Carolyn Glascow and found guilty by a jury of possession with intent to distribute cocaine.[2] The trial judge, however, acquitted appellant of the drug paraphernalia charge.[3]

## II.

■■■ In determining whether there was sufficient evidence to support appellant's conviction, we must view all the evidence in the light most favorable to the government. *Irick v. United States*, 565 A.2d 26, 30 (D.C.1989). We are obligated to reverse appellant's conviction, however, if the evidence adduced at trial, when viewed under that standard of review, would not permit a reasonable juror to find guilt beyond a reasonable doubt. *Langley v. United States*, 515 A.2d 729, 731 (D.C.1986). Since there was no proof of actual possession of the drugs by appellant, the government's case must rest upon the theory of constructive possession. It is not sufficient for the government to show that appellant was within reach of the drugs; mere proximity is not enough. *Wheeler v. United States*, 494 A.2d 170 (D.C.1985). Rather, in order to prove constructive possession, the government must show: (1) that appellant knew of the location of the drugs; (2) that he had the ability to exercise dominion and control over them; and, (3) that he intended to guide their destiny. *In re T.M.*, 577 A.2d 1149, 1151 n. 5 (D.C.1990). We conclude that on these facts the government has failed to make the required showing.

Although not entirely free from doubt, we are satisfied that viewing the evidence in the light most favorable to the government, the jury could reasonably have found: that appellant was aware of the drugs on the couch; and that because the drugs were only six feet away from him, he had the ability to exercise dominion and control over them. The government's proof falls short, however, in establishing that appellant intended to exercise any dominion and control over the contraband in question or to guide its destiny.

There was no evidence presented linking appellant to the drugs other than his proximity to them. A search of his person revealed no drugs or any other incriminating evidence that connected him to any drug activity. Nor was there any evidence

2. Appellant was charged with a single count of possession with intent to distribute (PWID) cocaine. The jury was instructed to consider that charge first with respect to the twenty-seven zip-lock bags recovered from the couch, and then with respect to the single rock that was found on the paraphernalia located on top of the table behind the couch and which was the subject of the possession of drug paraphernalia (PDP) charge. Using a special verdict form, the jury found appellant guilty of PWID for the twenty-seven zip-lock bags, but not guilty of PWID for the single rock. However, it found appellant guilty of simple possession, as a lesser included offense, as to the single rock. That verdict merged with the guilty verdict of PWID because appellant was charged with only one count of PWID. Our holding that there was insufficient evidence to support the jury's finding that appellant possessed the twenty-seven zip-lock bags would, without more, leave intact the jury's guilty verdict for simple possession of the single rock recovered from the paraphernalia.

We are also satisfied, however, for essentially the same reasons set forth in the text with respect to the twenty-seven zip-lock bags, that insufficient evidence exists to sustain the guilty verdict for simple possession of the single rock. We are buttressed in our conclusion by the experienced trial judge's not guilty verdict on the PDP charge because the rock was recovered from that paraphernalia. The trial judge found:

There is no doubt in the court's mind that [appellant] and Mr. Smith were aware of all these things around them, and there is extreme suspicion by the court that they may have been involved, but this court cannot say beyond a reasonable doubt that [appellant] and Mr. Smith actually possessed the drug paraphernalia as required by law.

3. Because the offense of possession of drug paraphernalia charged in this case carried a maximum penalty of not more than thirty days imprisonment and a fine of not more than a one hundred dollars, D.C.Code § 33–603(a) (1988 Repl.), the trial on that charge was heard by the judge rather than the jury. *See* D.C.Code § 16–705(b) (1989 Repl.).

that he handled any of the drugs.[4] Indeed, there was no indication that appellant was ever closer than six feet to them. At the time of the entry by the police, Carolyn Glascow was inches away, and co-defendant Smith was standing between appellant and the drugs. During the entire time the officers conducted their investigation, he remained standing in front of the couch. Moreover, appellant did not live in the apartment,[5] none of his belongings were found there, and there was no testimony regarding how long he had been there. The apartment lacked any of the tell-tale characteristics that readily suggest a premises used primarily for illicit drug activity.[6] Instead, the apartment was fully furnished and appeared to be the regular residence of the tenant. Thus, the clear import of the evidence presented was that appellant was nothing more than a visitor in someone else's home.

Our conclusion that there was insufficient evidence to sustain appellant's conviction is supported by this court's holding in *In re T.M.*, *supra*. In *T.M.*, police officers entered an apartment with a battering ram. Finding the living room unoccupied, they proceeded into a bedroom and discovered T.M. and four other individuals attempting to conceal themselves beneath blankets and clothing strewn about the room. Another individual was discovered hiding in a closet. Also discovered in the room was a box with 129 bags of cocaine, a pie plate containing powdered cocaine, and a handgun along with some ammunition. All five individuals in the room were approximately the same distance from the pistol, but at least one other person was closer to it than T.M. T.M. was acquitted of possession with intent to distribute cocaine, but adjudicated delinquent for possession of the handgun

and the ammunition. This court reversed on grounds of insufficient evidence.

In reversing, the court concluded that the evidence was lacking to link T.M. to the weapon. The proximity of T.M. to it, under even obviously suspicious circumstances, was insufficient to sustain a finding of constructive possession. The evidence *was* sufficient to support an inference that T.M. was aware of the gun, which was in plain sight, and that T.M. had the ability to exercise dominion and control over it, as was the case with Speight. However, there was no evidence establishing an intent to exercise any control over the weapon in question.[7]

The court acknowledged that constructive possession can be established by an accused's proximity to contraband coupled with " 'circumstances giving rise to an inference of a concert of illegal action involving [the contraband] by the occupants of the premises where [the contraband] was found.' " *Id.* at 1152–53 (quoting *Wheeler v. United States*, 494 A.2d 170, 173 (D.C.1985)). However, there was no evidence linking T.M. to concerted criminal activity or showing that T.M. had any prior association with the other individuals present. The same of course is true with Speight; there was no evidence other than his presence indicating he was involved in a conspiracy to engage in any drug trafficking activity.

In *T.M.* the court also emphasized that constructive possession of items found on the premises should not be imputed readily to a visitor. *Id.* at 1153 n. 8. There was no evidence that any of the personal possessions scattered about the apartment belonged to T.M. or that T.M., who was not the tenant, was anything more than what the court referred to as a short-term visitor. *Id.* at 1153 n. 8. Similarly, in this

---

**4.** *Cf. In re T.M.*, 577 A.2d 1149, 1150 (D.C.1990) (fingerprint found on pie plate containing cocaine).

**5.** Officer Morgan testified at trial that appellant lived in a different apartment in the building.

**6.** *See, e.g., Thompson v. United States*, 567 A.2d 907, 909 (D.C.1989) (empty apartment except for mattress and drugs).

**7.** In *In re F.T.G.*, 578 A.2d 1161 (D.C.1990), cited by the government, we distinguished *In re T.M.* on grounds not relevant here, namely the defendant's presence within the close confines of a motor vehicle.

case, the evidence indicated that appellant was nothing more than a visitor in someone's residence where contraband was discovered. *See Cook v. United States,* 272 A.2d 444, 447 (D.C.1971) (concluding that presence of tenant and others strains inference that non-tenant appellant possessed contraband found within apartment).

■ The government contends, however, that by giving a false name to the arresting officers appellant "[attempted] to conceal his involvement in this drug distribution group." Engaging in elusive behavior that appears to be an effort to avoid detection, under appropriate circumstances, can indicate consciousness of guilt. *Thompson v. United States,* 567 A.2d 907, 909 (D.C.1989) (defendant secreted himself behind partition as police officer questioned juvenile). Further, we have held that the use of an alias by the occupant of a premises where drugs are recovered carries some weight on whether the occupant is involved in criminal activity. *Wheeler v. United States, supra,* 494 A.2d at 173. We cannot conclude, however, that appellant's effort to conceal his identity at the time of his arrest was enough to establish his involvement in the drug activity involved here.

In *Wheeler* the defendant gave a fictitious name; however, there was much more linking her to the contraband beyond that factor and her presence in the room where the drugs were recovered. The defendant lived in the premises in question, and there was evidence supporting an inference that she occupied the actual bed from which the contraband was recovered. In addition, the defendant failed to respond to the police officer's knock on the door, and once the police officers gained entry they found her and two companions in the bathroom with the toilet being flushed, suggesting that they were disposing of evidence while the police officers attempted to gain entry. The fact that Wheeler also gave a fictitious name was simply one additional factor. In this case there is considerably less evidence than was the case in *Wheeler* linking appellant to the contraband: only his presence and his giving a false name after his arrest.

There was nothing to show that appellant's real name connected him to the other individuals, to the apartment, or to the drugs.[8] In light of the absence of any other evidence connecting appellant to the criminal activity charged, his use of an alias coupled with his presence was insufficient to prove he was a prospective distributor of the drugs.[9] Based on what the government has presented, there are at least three plausible explanations for appellant's presence: (1) he was innocently visiting a neighbor who happened to be engaged in illegal drug trafficking; (2) he was present in order to purchase drugs; or, (3) he was actively involved in the drug trafficking. The jury could only speculate as to appellant's actual role. We conclude that no reasonable juror could find that appellant's role was as a participant in drug trafficking in light of other plausible reasons for his presence.

Accordingly, the jury's verdict cannot stand and the judgment on appeal must be

*Reversed.*

---

**8.** Identification belonging to one of the other defendants was discovered in one of the bags hanging on the bedroom door which contained drugs.

**9.** In *T.M.* the government asserted that T.M.'s attempt to hide revealed an involvement in criminal activity. However, the court was un- persuaded that T.M.'s attempt to hide "when unknown persons had just noisily broken down the door with a battering ram" indicated that T.M. had any intention of exercising dominion or control over the pistol or ammunition. *In re T.M., supra,* 577 A.2d at 1153.