**Charles E. PARKER, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Sylvester J. LEWIS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 87–565, 89–847 and 87–1332.**

District of Columbia Court of Appeals.

Argued May 10, 1990.

Decided Dec. 20, 1991.

---

Matthew C. Leefer, appointed by this court, for appellant Parker.

Mindy A. Daniels, appointed by this court, for appellant Lewis.

Eric M. Acker, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Elizabeth Trosman, G. Michael Lennon and J. Edward Agee, Asst. U.S. Attys., were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and NEWMAN, Senior Judge.[*]

* Judge Newman was an Associate Judge of this court at the time of argument. His status changed to Senior Judge on March 11, 1991.

1. The bag contained twenty-seven packets of heroin and two packets of cocaine.

2. Appellant Parker's brief presents only a challenge to the sufficiency of the evidence to sustain his conviction. At oral argument, however, counsel for Parker adopted the additional arguments advanced by appellant Lewis, and the government interposed no objection. Parker does not adopt Lewis's ineffective assistance of counsel claim. See Part IID infra.

STEADMAN, Associate Judge:

■ Appellants, the occupants of the front seat of a car on which was located a paper bag containing a quantity of drugs,[1] were both convicted of possession of heroin with intent to distribute, D.C.Code § 33–541(a)(1) (1988), and simple possession of cocaine, id. § 33–541(d). During deliberations, the jury asked if it could convict on the offense of simple possession of heroin without reaching agreement on the greater offense of possession with intent to distribute. The trial court on two separate occasions reinstructed the jury that it must reach a unanimous agreement on the greater offense before it could consider the lesser. We hold that the giving of this instruction, "sometimes known as the 'acquittal first' instruction," Jones v. United States, 544 A.2d 1250, 1252 (D.C.1988), in the circumstances here constituted reversible error and requires that appellants be granted a new trial on the possession with intent to distribute charge. We reject the appellants' other contentions.[2]

### I.

The trial court issued its general charge to the jury at the close of trial on Wednesday, January 21, 1987. Before instructing the jury on the elements of the lesser included offense of possession of heroin, the trial court told the jury: "[A]fter your consideration of [the possession with intent to distribute] charge, if you define [sic] a particular defendant not guilty as to the charge of possession with the intent to distribute of heroin, then you shall consider the charge of possession of heroin." At 12:10 p.m. on Tuesday, January 27,[3] the

3. The jurors had begun deliberations at 4:00 p.m. on Wednesday, January 21, and were excused for the day at 4:50 p.m. They resumed deliberations on Thursday, January 22, at approximately 10:30 or 11:00 a.m., but were excused at approximately 12:55 p.m. because of a major snowstorm. Because of the severity of the storm, the jurors were unable to resume deliberations until Tuesday, January 27, at 11:50 a.m. Twenty minutes later, the trial court received the note indicating that the jury was deadlocked on one count.

jury sent the court a note stating, "We are unable to reach a verdict on one of the counts. How should we proceed?"

Confronted with this note, the parties agreed that the trial judge, accompanied by the court reporter but not the attorneys, should "stop into the jury room ... and give a very brief message to the jury ... to ask them to continue their deliberations."[4] The trial judge informed the parties that "substantively, I am going to say very little." However, upon entering the jury room, the judge instructed the jury that "[y]ou may consider the offense of possession of heroin if and only if the jury returns a verdict of not guilty of the charge of possession with intent to distribute heroin." The trial judge then repeated that the jurors "may only consider the charge of possession of heroin if and only if the jury has unanimously agreed on a verdict of not guilty with respect to the charge of possession with intent to distribute heroin. You may only consider a lesser included offense if you have returned a verdict of not guilty as to the greater offense."

At approximately 4:18 p.m. on January 27, the jury sent the court a second note which asked more specifically, "Is there any way to convict on possession of heroin without agreeing on distribution?"[5] During the colloquy on how to respond, counsel for appellant Parker argued that since the jury in effect had to decide whether his client possessed heroin before deciding whether he did so with intent to distribute, the jury could find the defendants guilty of simple possession without resolving the in-

tent to distribute question. Accordingly, he argued that the trial court should answer "yes" to the jury's question whether it could convict on possession of heroin without agreeing on distribution. The trial court immediately responded, "I think under the law they have to consider the greater offense first."[6] The judge then again instructed the jury that "you must come to a unanimous decision on the charge of Possession With Intent to Distribute Heroin before you may undertake any consideration of the lesser included offense." The jury deliberated for approximately twenty-five minutes before being excused for the evening; the next morning, at 11:25, the jury found both appellants guilty of the greater offense of possession of heroin with intent to distribute.[7]

In *Jones v. United States, supra,* 544 A.2d at 1253, we described the "flaw" associated with the "acquittal first" instruction. We explained that such an instruction "'improperly interfere[s] with the jury's deliberations'" because the jury "is encouraged—some would say coerced—to favor conviction of the greater offense." *Id.* (citation omitted).

Accordingly, we held that "when the jury reports a deadlock between the greater and the lesser offense, the 'acquittal first' instruction should not be given because it is impermissibly coercive." *Id.* at 1254. Instead, we said, the jury should be given the less-stringent "reasonable efforts" instruction.

---

4. The court had already denied appellant Lewis's motion for a mistrial and his motion for a *Winters* instruction. *See Winters v. United States,* 317 A.2d 530, 534 (D.C.1974) (en banc).

5. In this note, the jury also asked, "What is the definition of intent?"

6. In response to the jury's second note, counsel for appellant Lewis moved for a mistrial on the ground that the jury did not understand that the charge against his client was not distribution but possession with intent to distribute. He also initially indicated, apparently relying on the original instructions and verdict form, that he "tend[ed] to agree" with the prosecutor's argument that the jury had to reach a verdict on the greater charge before they could consider the lesser. However, he made this statement

before counsel for appellant Parker argued that the jury should be able to consider the lesser offense without reaching agreement on the greater. Because the trial court immediately rejected that contention, counsel for appellant Lewis had no opportunity before the ruling to join appellant Parker's argument. Under all the circumstances, we reverse the convictions of possession with intent to distribute for both of these identically situated defendants. *See Adams v. United States,* 558 A.2d 348, 351 (D.C. 1989); *Williams v. United States,* 382 A.2d 1, 7 n. 12 (D.C.1978).

7. The jury also found both appellants guilty of possession of cocaine.

More recently, in *Wright v. United States*, 588 A.2d 260 (D.C.1991), we had occasion to revisit this general issue in the context of the court's initial charge to the jury, a matter we had specifically left open in *Jones, supra,* 544 A.2d at 1254. We observed that "[e]ither version of the instruction has advantages and disadvantages for each side in a trial," and that neither was wrong as a matter of law. *Wright, supra,* 588 A.2d at 261–62. Invoking considerations analogous to those underlying the rule of lenity, we held that the defendant's wishes should prevail. Accordingly, "where timely requested, the trial court should give an instruction which allows the jury to consider the lesser included offense, if unable to reach a verdict on the greater offense, after making all reasonable efforts to do so." *Id.* at 262.

■ Applying these principles to the instant case,[8] we must conclude that the trial court erred in giving an "acquittal first" instruction after the jury reported a deadlock on the greater offense of possession with intent to distribute.[9] As in *Jones, supra,* 544 A.2d at 1254, a retrial is necessary on the charge of possession of heroin with intent to distribute "since we cannot know what verdict a properly instructed jury would have returned." We see no basis, however, for reversing appellants' convictions of possession of cocaine because of the erroneous reinstructions.[10] The jury's deadlock involved only the question whether appellants had the requisite intent to distribute heroin. That issue was irrelevant to appellants' guilt on the simple possession of cocaine charges. Accordingly, there was no "prejudicial 'spillover'" as a consequence of the instructional error on the possession of heroin with intent to distribute count. *Gethers v. United States,* 556 A.2d 201, 205 (D.C.1989).[11]

## II.

Appellants' other assertions of error do not merit relief.

### A.

■ Appellants first contend that the police lacked probable cause to arrest them or to search their vehicle. The government's evidence at the suppression hearing showed that a citizen flagged down a police officer and told him that a man in a brown Plymouth with District of Columbia license plates was about to make a drug drop at a specified location a few blocks away. The citizen, who gave her name and address to the officer, stated that the drugs were located on the front seat of the car in a paper bag. The officer, joined by his partner, responded and observed a brown Plymouth with District of Columbia license plates as it pulled to a halt in front of the address given by the citizen informant. As the police approached the car, one officer observed a brown paper bag between the driver and passenger. On seeing the bag,

---

8. In *Jones,* as here, the defendant had objected to the refusal of the trial court to allow the jury to consider the lesser offense without a disposition of the greater. Thus, we have no occasion to consider the application of *Jones* where a defendant might opt for an "acquittal first" reinstruction. Nor need we take a position here with respect to the retroactivity *vel non* of the *Wright* decision because, even without it, we would reverse. See note 9 *infra.*

9. Arguing before us prior to the *Wright* decision, the government distinguished *Jones* from the present case on the grounds that the trial court in *Jones* had created a "coercive atmosphere" by giving a *Winters* instruction and by informing the jury that it had "a duty to reach a verdict." *Jones, supra,* 544 A.2d at 1254. Even if a "coercive atmosphere" is required for reversal, the fact that the trial court here, in response to the jury's first note, twice gave an "acquittal first" instruction out of the presence of counsel, taken together with the jury's second inquiry and the fact that inclement weather had already required the jurors to deliberate sporadically for more than a week, see note 3 *supra,* would establish a sufficiently coercive atmosphere for this purpose.

10. Appellants themselves assert only that error in giving an "acquittal first" instruction requires "a retrial ... with regard to the charge of possession with intent to distribute heroin."

11. In *Jones* itself, this court affirmed the appellant's convictions for three crimes involving possession of a gun and ammunition, notwithstanding the erroneous giving of an "acquittal first" instruction on the possession of cocaine with intent to distribute charge. *Jones, supra,* 544 A.2d at 1251, 1254.

the officer asked both occupants to exit the car. He then reached inside the car, retrieved the bag, opened it, and saw what appeared to be narcotics. The officer then placed appellants under arrest. The trial judge concluded that upon seeing the brown paper bag, the police had probable cause, and he therefore denied the motion to suppress.[12]

In *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court recited the rule, originating in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), that

> if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.

*Ross, supra,* 456 U.S. at 805, 102 S.Ct. at 2162 (quoting *Carroll, supra,* 267 U.S. at 149, 45 S.Ct. at 283–84)). The Court emphasized that this exception to the warrant requirement "applies only to searches that are supported by probable cause," and that such a search "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *Id.,* 456 U.S. at 809, 102 S.Ct. at 2164–65 (footnote omitted). In cases involving this automobile-contraband seizure rule, a reviewing court should employ the "totality-of-the-circumstances analysis" announced in *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), to determine whether an informant's tip would have established probable cause for a search warrant. Ultimately, our role "is to ensure that the trial court had a substantial basis for concluding that probable cause existed." *Goldston v. United States,* 562 A.2d 96, 98 (D.C.1989).

Along with an informant's basis of knowledge of criminal activity, the informant's general credibility and the reliability of the information he or she provides are important factors in a probable cause assessment. *See Gates, supra,* 462 U.S. at 229 n. 4, 230, 103 S.Ct. at 2327 n. 4, 2328; *Goldston, supra,* 562 A.2d at 101. As to credibility, the informant in this case was a citizen who gave her name and address to police. In identifying herself, she exhibited a willingness to be held accountable for the information she had provided to police. We have recognized that a citizen informant, particularly one who identifies herself, is 'a " 'more credible source than a paid police informant.' " *Allen v. United States,* 496 A.2d 1046, 1048 (D.C.1985) quoting *Rushing v. United States,* 381 A.2d 252, 255 (D.C.1977) (citizen informant who identifies herself is more reliable than one who wishes to remain anonymous)); *cf. Gates, supra,* 462 U.S. at 233–34, 103 S.Ct. at 2330 ("if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary"). As to the reliability of the information provided by the informant, here it notably had the predictive quality to which the Supreme Court has given significant weight. *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). The police independently corroborated the details she provided, including the precise location and description of the car and the presence of a brown paper bag on the front seat. *See Gates, supra,* 462 U.S. at 244, 103 S.Ct. at 2335 (" '[b]ecause an informant is right about some things, he is more probably right about other facts,'—including the claim regarding the [suspects'] illegal activity" (citation omitted)); *Goldston, supra,* 562 A.2d at 100 (corroborated details bolster reliability of information and credibility of informant). This type of corrobora-

---

12. The trial judge did not make expressly clear whether he found that the police had probable cause to search the car for contraband or probable cause to arrest appellants. In either case, a similar standard for probable cause applies. *Spinelli v. United States,* 393 U.S. 410, 417 n. 5, 89 S.Ct. 584, 589 n. 5, 21 L.Ed.2d 637 (1969). Nor does it make any difference whether the police had probable cause to search the entire car or only the paper bag itself. *California v. Acevedo,* —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

tion " 'reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the [informant's tip].' " *Gates, supra,* 462 U.S. at 244–45, 103 S.Ct. at 2335 (quoting *Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)). As such, we are satisfied that the trial court had a "substantial basis for concluding," *Goldston, supra,* 562 A.2d at 98, that probable cause existed to search the brown paper bag on the front seat of the car to see if it contained contraband. *Cf. Gates, supra,* 462 U.S. at 246, 103 S.Ct. at 2336 (probable cause for search existed where anonymous informant provided detailed information corroborated by police); *Galloway v. United States,* 326 A.2d 803, 805 (D.C.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975) (where unidentified citizen reported that occupants of a car had a gun, and police corroborated details about the car and its occupants, police had probable cause to search car for pistol in context of a "rapidly moving street occurrence"). Upon discovering what appeared to be narcotics, the police had probable cause to place appellants under arrest.

### B.

■ Appellants next contend that the evidence was insufficient to sustain their convictions on any of the counts.[13] The government's evidence at trial[14] showed that on July 2, 1986, at approximately 11:00 a.m., two Metropolitan Police Department ("MPD") officers observed an older model brown Plymouth with two occupants in the front seat as it pulled to a stop and parked. One of the officers identified appellant Lewis, in whose name the car was registered, as the driver of the car and appellant Parker as the passenger. As he approached the Plymouth, which had a single front bench seat, the officer saw a small brown paper bag, approximately six to eight inches high and three to four inches wide. The brown bag was in plain view on the front seat, almost exactly between the appellants; it rested approximately ten inches away from Lewis and twelve to fourteen inches away from Parker. The officer asked appellants to step out of the car, retrieved the paper bag, and opened it; inside, he discovered twenty-seven packets of heroin and two packets of cocaine.

The government also offered the testimony of an MPD detective qualified as an expert in the trafficking, packaging, and use of illicit drugs, including heroin and cocaine, in the District of Columbia. The expert stated that the area where appellants had parked "is one of the highest drug areas in the city," and that heroin is the primary drug sold there. He also stated that heroin trafficking in the area usually begins between 10:00 a.m. and noon each day. According to the expert, heroin distribution schemes typically involve a number of operatives, including a "holder," who handles from one to ten "bundles" of heroin, each bundle containing ten to twelve heroin packets, and a "runner," who locates buyers and actually delivers heroin to the buyers. The expert explained that the "holder," in turn, typically receives the bundles from a "lieutenant," a supplier higher in the drug distribution echelon, who comes into the marketing area and "drop[s] ... off" the drugs. In order to avoid attracting attention, lieutenants frequently drive into the drug marketing area in inconspicuous, "middle aged" vehicles. These lieutenants also carry heroin in "natural looking" packages, such as brown paper bags, to "mask" the drugs they are transporting.

The expert also presented important testimony to the effect that the possession of twenty-seven individual bags of heroin was explainable only for distribution, not per-

---

13. If this argument were sustained, double jeopardy principles presumably would bar a retrial of the convictions for possession with intent to distribute, which we today reverse, as well as the simple possession counts which we affirm. *See Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

14. Evidence with respect to the citizen informant was not presented at trial. It therefore of course cannot be considered in evaluating the sufficiency of the evidence underlying appellants' convictions. *See Jackson v. United States,* 395 A.2d 99, 103 n. 4 (D.C.1978). Neither appellant presented any evidence in his defense.

sonal use. He said that these bags were of a type known as "quarters," which is the normal size for individual sale. A heavy heroin user would instead buy in larger quantities, called "dippers" or "half-dippers," [15] in order to reduce the price, improve the quality, and lessen the possibility of fraud. "Two individuals aren't going to utilize 27 quarters." [16]

In reviewing the sufficiency of the evidence here, we are mindful that we operate under a number of well-settled principles. This court must consider the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences. *Patterson v. United States,* 479 A.2d 335, 337–38 (D.C.1984). No distinction is to be drawn between direct and circumstantial evidence. *Driver v. United States,* 521 A.2d 254, 259 (D.C.1987). The government's evidence may be sufficient even if it does not exclude every reasonable hypothesis other than guilt; the evidence, in other words, need not compel a finding of guilt beyond a reasonable doubt. *Irick v. United States,* 565 A.2d 26, 30–31 (D.C. 1989). Neither this court nor the trial court may "usurp the jury's prerogative of determining credibility, weighing the evidence, and drawing reasonable inferences." *Stack v. United States,* 519 A.2d 147, 159–60 (D.C.1986). Thus, the issue is not whether this court might find reasonable doubt; rather, "[w]e can only determine that the evidence is insufficient if we conclude, as a matter of law, that no reasonable juror, acting reasonably, could convict on the evidence presented." *Beatty v.*

*United States,* 544 A.2d 699, 701 (D.C. 1988).[17]

The government in this case proceeded on the theory that both appellants constructively possessed[18] the drugs found in the brown paper bag. As we stated in *Thompson v. United States,* 567 A.2d 907 (D.C.1989): "To sustain a conviction for constructive possession, the jury must be able to find beyond a reasonable doubt that the accused knew of the presence of contraband ... and that he exercised a right to dominion or control over the objects in question." *Id.* at 908 (citation omitted). Although we have noted that "mere proximity to an illegal item does not of itself prove knowledge coupled with dominion or control," *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987), we will sustain a conviction for constructive possession of drugs where that proximity "is colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part." *Id.; see also United States v. Hubbard,* 429 A.2d 1334, 1338 (D.C.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981).[19]

In this case, the evidence amply supports a conclusion that at least one of the occupants of the car was engaged in criminal activity. Because the brown bag containing the drugs was close to and in the view of both appellants, the question is whether the government's evidence was sufficient to support the jury's determination that *both* appellants "knew of the presence of the contraband," *Thompson, supra,* 567 A.2d at 908, *i.e.,* that the brown bag contained heroin and cocaine.[20] We conclude

---

**15.** A dipper contains around 1700 mgs. Each quarter here, in contrast, contained about 200 mgs.

**16.** Counsel for appellant Lewis extensively cross-examined the expert about this conclusion.

**17.** For a case to reach us, the trial court present to hear the actual presentation of the evidence must also have concluded, applying the same standard as we, that the evidence was sufficient to convict. Thus here, the trial court denied the defendants' motions for acquittal.

**18.** This case, however, is a diminished version of many constructive possession cases, in that

the contraband was within the actual immediate reach of both defendants.

**19.** As the dissent to this portion of the opinion rightly notes, recent cases affirm that these concepts and the proof must reflect both an ability and an intent to exercise dominion and control over the items in question. *Speight v. United States,* 599 A.2d 794 (D.C.1991); *In re T.M.,* 577 A.2d 1149 (D.C.1990).

**20.** The evidence that the bag containing drugs sat unobstructed on the front seat of the car within arm's length of both appellants was sufficient to show that the bag was "'convenient of access and within reach'" of both appellants.

that it was. The narcotics-laden bag, a commodity of considerable value, was not being hoarded by either of the appellants, but was virtually equidistant between them, suggesting the permissible inference of shared possession. The scene was one of a confined space where driver or passenger, engaged in a drug distribution business, each had control of whether to be present with the other at all in the car and where to locate a valuable container of illicit drugs.[21]

In addition, as it did in *Carpenter v. United States*, 475 A.2d 369 (D.C.1984), the government here provided expert testimony to show the existence of an " 'ongoing criminal operation.' " *Id.* at 375 (citation omitted). This testimony established that the heroin in the bag was bound not for personal use, but for distribution, a scheme which necessarily involves multiple individuals. Furthermore, appellants, in an inconspicuous older model car, pulled to a halt in an area notorious for heroin trafficking at a time when daily drug sales typically begin. A significant number of individually packaged bags of heroin were concealed in a brown bag. These facts precisely matched the method, detailed by the expert, by which drug distribution "lieutenants" deliver narcotics to "holders."[22] As such, there was significant circumstantial evidence that both appellants were parties to a drug delivery. *See Brown, supra,* 546 A.2d at 394 ("jury may infer ... knowledge from circumstantial evidence"); *Curry, supra,* 520 A.2d at 263 ("[k]nowledge of the whereabouts of the illegal item may be inferred from circumstantial evidence"); *Wheeler v. United States,* 494 A.2d 170, 173 (D.C.1985) (constructive possession conviction may be sustained "where there are circumstances giving rise to an inference of a concert of illegal action involving drugs by the occupants of the premises where the drugs are found").

We are not unmindful of the risk, which must be avoided, that the patina of expert testimony will endow purely innocent activity with criminal attributes merely because that activity is "consistent"[23] with actions of criminals. An innocent driver double-parked with a running motor cannot be convicted as an accomplice in a bank robbery solely because an expert testifies that such activity might be expected of the driver of a getaway car, as well as one waiting for his wife to emerge from a store. But the defendants here were not convicted solely on the basis of expert testimony making criminal innocent activity. The fact is that in the paper bag between them was a quantity of heroin which only drug dealers would possess.[24] The expert testimony here, in addition to making clear the distributive attribute of the quantity of heroin in the bag, gave important color and meaning to the observed facts but did not, alone, supply the basis for the convictions.

In sum, we cannot say that "no reasonable juror acting reasonably, could convict on the evidence presented." *Beatty, supra,* 544 A.2d at 701.

21. *Cf. United States v. Harrison,* 289 U.S.App. D.C. 220, 227, 931 F.2d 65, 72, *cert. denied,* —— U.S. ——, 112 S.Ct. 408, 116 L.Ed.2d 356 (1991): "presence is especially significant where, as here, it 'could rationally have been viewed as a privilege reserved exclusively for participants' " (citation omitted).

22. The jury was aware, through cross-examination, that the expert had familiarity with the facts of this case before testifying and could take that into accounting in weighing his testimony.

*Brown v. United States,* 546 A.2d 390, 395 (D.C. 1988) (citation omitted). The evidence therefore was sufficient to establish that both appellants could have joint "dominion or control" over the contraband. *Curry, supra,* 520 A.2d at 263.

23. This much-used word has certain chameleon-like qualities. Many activities may be "consistent" with a certain state of affairs, but equally, if not more, "consistent" with completely different ones. The probative effect of "consistent" evidence depends upon the extent to which the consistency is exclusive of other explanations, and elicited testimony using the word should make this clear.

24. Thus, if this case involved only the possession of the two packets of cocaine alone in a bag, the expert evidence about the other conduct being consistent with a drug drop could not sustain a conviction for distribution nor, most likely, possession.

## C.

█ Appellants finally argue that the trial court erred in denying a motion for mistrial made after an unredacted copy of a Drug Enforcement Agency form was inadvertently submitted to the jury. Because the unredacted portion was cumulative of other testimony at trial, the improperly admitted evidence could not have "substantially swayed" the jury, *Vaughn v. United States*, 367 A.2d 1291, 1295 (D.C. 1977), and there was no abuse of discretion. *Carpenter v. United States*, 430 A.2d 496, 506 (D.C.) (en banc), *cert. denied*, 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981).

## D.

In appeal No. 89–847, a distinct appeal from the denial of a motion under D.C.Code § 23–110 (1989) for collateral relief, appellant Lewis contends that the trial judge, in conducting the hearing on his ineffective assistance of counsel allegation, failed to make an inquiry adequate to determine whether a witness, whom Lewis alleged his counsel should have called at trial, had a valid Fifth Amendment privilege. However, even assuming that the witness had no Fifth Amendment privilege, Lewis's trial counsel testified at the hearing that he had made a tactical decision not to call the witness based on his belief that the witness's testimony would be more inculpatory than exculpatory. We agree with the court's conclusion that there was no reason to "second guess" this "strategic choice." *See Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

The convictions for possession of heroin with intent to distribute are reversed for a new trial. The convictions for possession of cocaine are affirmed. The order denying the motion of appellant Lewis under D.C.Code § 23–110 is affirmed.

*So ordered.*

NEWMAN, *Senior Judge*, concurring in part, dissenting in part:

Since the government was unable to present evidence showing to whom the drugs belonged—the drugs being concealed in the closed brown paper bag equidistant between the passenger and the driver—the majority holds it is proper for the jury to convict both of them. Since this offends constitutional due process, *see Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) (a conviction devoid of evidentiary support violates due process), I dissent.

To convict of a possessory drug offense based on the doctrine of constructive possession, the government must prove three things beyond a reasonable doubt: (1) that the defendant was aware of the location of the drugs; (2) that he had the ability to exercise dominion and control over them; and (3) he had the intent to control the destiny of the drugs. *In re T.M.*, 577 A.2d 1149 (D.C.1990) (citing among other cases, *Bernard v. United States*, 575 A.2d 1191 (D.C.1990)). We have quite recently reaffirmed the centrality of the intent requirement. *Speight v. United States*, 599 A.2d 794 (D.C.1991). In both *T.M.* and *Speight* we held that the presence of defendants in close proximity to contraband in open and plain view (a pistol and ammunition in *T.M.*, and narcotics and paraphernalia in *Speight*) was insufficient to satisfy the intent to guide the destiny prong of constructive possession. Here, however, where the drugs were in a closed container, with no evidence of which, if either, of the persons within the car knew even the contents of the bag, the majority finds sufficient evidence of both knowledge and intent. I respectfully suggest that what the government's factual witnesses were unable to show cannot be provided either by an "expert witness" whose testimony was merely that the defendants' conduct was consistent with a drug distribution operation (a truism) or by appellate "factual" fiat. See majority opinion *supra* at 52. (The appellants were "engaged in a drug distribution business.")

Since there was insufficient evidence to sustain the convictions, the Double Jeopardy Clause prevents retrial. *See Burks v.*

*United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).[1]

1. I join the other portions of the majority opinion.