**Mark A. BURNETTE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–844.**

District of Columbia Court of Appeals.

Argued Oct. 28, 1991.
Decided Dec. 26, 1991.

Sandra K. Levick, Public Defender Service, with whom James Klein, and Elizabeth G. Taylor, Public Defender Service, were on the brief, for appellant.

Peter R. Zeidenberg, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, and Thomas C. Black,

Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN and FARRELL, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM:

Appellant Burnette appeals from his convictions for carrying a pistol without a license, D.C.Code § 22–3204(a) (1989), possession of an unregistered firearm, D.C.Code § 6–2311(a) (1989), and unlawful possession of ammunition, D.C.Code § 6–2361(3) (1989). Appellant argues that the government presented insufficient evidence to prove that he constructively possessed a handgun found concealed at his feet beneath a floormat in the car he occupied as a backseat passenger. In the particular circumstances of this case, we are compelled to agree. We therefore vacate the judgment of conviction and remand with directions to enter a judgment of acquittal.[1]

Appellant was one of three passengers in a jeep. He was seated in the back seat of the jeep directly behind the driver. A third person, Gerald Vines, was seated in the front passenger seat. When Officer John Dunston stopped the vehicle to investigate a traffic violation, he observed a nine-millimeter handgun on the floor in front of Vines, who had moved forward and appeared to move something with his hands as the officer approached. Officer Dunston seized that gun and arrested Vines. Burnette and the driver were directed to get out of the jeep. A second weapon, a .357 magnum handgun, was recovered from under the floormat where appellant was seated; according to Dunston, it was bulging upwards from beneath the mat. Testimony established that it could not have been pushed from the front seat to the rear because there was insufficient clearance between the seat and the floor. The government could offer no testimony as to how long appellant had been in the car or of the nature or extent of his relationship to the other occupants.

The government relied in the trial court on a theory of constructive possession, and does so here. To prove constructive possession, the government was required to show that appellant (1) knew of the location of the handgun; (2) had the ability to exercise dominion and control over it; and (3) intended to exercise dominion and control over it. *See Speight v. United States*, 599 A.2d 794, 796 (D.C. 1991); *In re T.M.*, 577 A.2d 1149, 1151 & n. 5 (D.C.1990); *Bernard v. United States*, 575 A.2d 1191, 1195 (D.C.1990) (citing *Brown v. United States*, 546 A.2d 390, 394 n. 2 (D.C.1988)). In this case, we reject appellant's argument that the jury could not rationally find beyond a reasonable doubt that he knew the gun lay at his feet beneath the floormat, or that he lacked the ability to exercise dominion and control over it. Although there was no evidence as to how the gun got under the floormat, the jury could properly infer that appellant must have placed his feet on the mat, felt a large hard object, lifted up the mat, and seen the gun. Moreover he clearly was able to exercise dominion and control since the gun lay directly at his feet and far closer to him than to either of the other two occupants of the jeep.

It is on the third element, however, that we conclude the government's proof founders. The government relies on cases in which this court has held "that the requisite intent [to exercise dominion and control] may be inferred from the presence of contraband in an automobile, in plain view, conveniently accessible to the defendant." *In re F.T.J.*, 578 A.2d 1161, 1163 (D.C. 1990). *See Tucker v. United States*, 421 A.2d 32, 35 (D.C.1980); *Holley v. United States*, 286 A.2d 222–23 (D.C.1972); *Kenhan v. United States*, 263 A.2d 253, 254 (D.C.1970); *Waterstaat v. United States*, 252 A.2d 507, 508–09 (D.C.1969). *See also Hamilton v. United States*, 395 A.2d 24, 28 (D.C.1978); *Johnson v. United States*, 309 A.2d 497, 499 (D.C.1973), *cert. denied*, 416 U.S. 951, 94 S.Ct. 1960, 40 L.Ed.2d 301

---

1. In light of this disposition, we do not reach appellant's argument with respect to the prosecutor's closing argument.

(1974). The premise of these decisions, however, is that the contraband was both immediately accessible to *and* in plain view of the occupant. The government thus asks us to extend these decisions to encompass what might be termed "plain feel": that is, it was reasonable for the jury to infer beyond a reasonable doubt not just that appellant, having felt the bulge of an object under the mat, lifted the mat and saw the gun, but also that his knowledge of the gun justified the additional inference that he intended to exercise dominion over the gun—to "guide [its] destiny." *In re T.M.*, 577 A.2d at 1151 n. 5.

We are unwilling to take that step. The precise meaning of the concept "intent to exercise dominion and control" has not been explicated in our decisions; but it necessarily goes beyond mere knowledge by implying an intent—inferable from the circumstances—to assert dominion as against (hypothetical) competing claims to possession by others. *Cf. Rakas v. Illinois*, 439 U.S. 128, 149, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978) (dominion and control over dwelling entails authority to "exclude others from it"). This added requirement of proof follows from the fact that constructive possession is a proxy for *actual* possession, *e.g.*, in one's hand, pocket or lap. Consequently, we think the inference of a car passenger's intent to exercise control drawn solely from evidence of the passenger's convenient access to contraband (*e.g.*, an unregistered weapon or illegal drugs) in a car should not be extended beyond situations where the evidence shows the contraband was in plain view of that passenger defendant. The government cannot avail itself of that inference here.

We have also recognized, however, that the additional evidence needed to complete the proof of constructive possession may be furnished "by evidence linking the accused to an ongoing criminal operation of which that possession is a part." *Davis v. United States*, 564 A.2d 31, 44 (D.C.1989)

(en banc) (citations and additional quotation marks omitted). We have found such additional evidence in *Brown v. United States*, 546 A.2d 390 (D.C.1988), and *Logan v. United States*, 489 A.2d 485 (D.C.1985), as well as *Davis*. The proof of such an ongoing criminal operation need not be explicit or strong; in *Logan*, for example, it consisted solely in the defendant's car attempting to elude the police after making an illegal turn, and in someone in the car throwing the gun from the car as the vehicle finally slowed down. *Id.* at 491–92.[2]

But the government can point to no evidence supporting a similar criminal venture "centering around possession of the pistol" in this case. *Brown*, 546 A.2d at 397; *see also Easley v. United States*, 482 A.2d 779, 782 (D.C.1984). Appellant and his codefendants did not attempt to elude the police by driving away, *compare Logan, supra*; there was no evidence of previous suspicious behavior on which the police were acting at the time they pulled over the car, *compare Brown* and *Davis, supra*; there was no evidence about any of appellant's activities earlier that night, *compare Brown* and *Davis*; and there is no evidence that the gun in the front seat was in appellant's plain view either earlier in the evening or at the time the police pulled over the jeep. *Compare Brown*.

Moreover, the government did not present any evidence as to the relationship between appellant and the other two occupants. Appellant's two codefendants presented the only evidence to suggest that the three were acquaintances, but because appellant moved for a judgment of acquittal after the close of the government's case and did not thereafter present any evidence, this court—as the government concedes—may not properly rely on the codefendants' evidence. *See Wesley v. United States*, 547 A.2d 1022, 1025 (D.C.1988).

■ Finally, the codefendant's furtive gesture in the front passenger seat cannot be attributed to appellant. The codefend-

---

**2.** Similarly, in *Brown* the proof of "an ongoing venture centering around possession of the pistol" consisted in essence of the three defendants acting "in concert by heading into the District

and then moving about together [on foot] late at night through dark streets, all knowing that one of their number carried the pistol." 546 A.2d at 397.

ant made the gesture as the police officer was walking up to the car five minutes after the officer had pulled the car over (it took him five minutes to run a vehicle identification check). That gesture tended to show the codefendant's consciousness of guilt with respect to the gun in the front seat area but, without more, did not indicate a joint enterprise involving appellant. *Compare Logan, supra.*

In sum, without evidence wholly absent here illuminating the circumstances of appellant's presence in the car, a jury could not rationally—beyond a reasonable doubt—infer the requisite intent to exercise dominion and control over the weapon from appellant's position seated above the gun concealed beneath the floormat.

The judgment of conviction is, accordingly,

*Reversed.*

PRYOR, Senior Judge, dissenting:

This case raises two related questions for our consideration. The first concerns perhaps a subtle modification in the way this court defines and explains the concept of possession. In turn, we are led to the question of proof, or legal sufficiency, where the components of possession are strongly contested issues.

As the majority opinion, at n. 2, indicates, this court, in a few recent decisions, has altered the manner in which we describe possession. In *Brown v. United States,* 546 A.2d 390, 394 (D.C.1988), we essentially applied a two-part analysis: (1) knowledge of the item, (2) and the exercise of dominion and control over it. *See also Curry v. United States,* 520 A.2d 255 (D.C.1987), *Easley v. United States,* 482 A.2d 779, 781 (D.C.1984), *Tucker v. United States,* 421 A.2d 32, 35 (D.C.1980).

More recently, in *Speight v. United States,* 599 A.2d 794, 796 (D.C.1991), and in *In re T.M.,* 577 A.2d 1149, 1151 n. 5 (D.C. 1990), we have modified our formulation. We state that the defendant must (1) have knowledge of the item, (2) intend to exercise dominion and control, and (3) have the ability to exercise dominion and control.

Whether this change in formulation represents a substantive change in the sum total of the meaning of possession is unclear. It is clear, as all of our opinions have consistently reiterated, that mere presence near an item or even knowledge of an item, by itself, cannot be construed as "possession" of the item. With this concern in mind, and comparing the two statements of the test, it seems clear that having knowledge of an item and *exercising control* over it, either directly or indirectly, necessarily includes the intent to exercise dominion and control. However, the *ability* to exercise dominion and control over an item is probably less than *actually* exercising dominion and control. In short, I think the newer formulation of possession redistributes the elements of the offense, now emphasizing knowledge and intent to control as primary *mens rea.*

These different formulations cause some problems for us as we review the legal sufficiency in close cases, as here. In this instance, the majority opinion recites the following facts:

Appellant was one of three passengers in a jeep. He was seated in the back seat of the jeep directly behind the driver. A third person, Gerald Vines, was seated in the front passenger seat to the right of the driver. When Officer John Dunston stopped the vehicle to investigate a traffic violation, he observed a .9 millimeter handgun on the floor in front of Vines. Officer Dunston seized that gun and arrested Vines. Burnette and the driver were directed to get out of the jeep. A second weapon, a .357 magnum handgun, was recovered from under the floor mat where appellant was seated....

During its deliberations, the jury had at its disposal certain exhibits and testimony worthy of mention here. Admitted into evidence were both the instant weapon and the other handgun recovered from the floor in the front section of the jeep. That handgun was in plain view, in sight of both the driver and the front seat passenger. The live ammunition removed from the guns was admitted. Also admitted were four photographs, which accurately represented (1) the exterior of the jeep from the rear,

(2) the driver's seat and the front interior portion of the jeep, (3) the front passenger's seat and floor area where the .9 millimeter handgun was found, and (4) the rear passenger's seat, directly behind the driver's seat, and the floor area where the .357 magnum was found. Officer Dunston, who conducted the initial search of the jeep, testified that he found the instant weapon bulging upwards from beneath the floor mat at appellant's feet. His testimony also established that there was insufficient clearance through which to slide an object the size of a .357 magnum from the front section of the jeep under the driver's seat to the back of the jeep.

This court has, of course, repeatedly stated that the evidence is sufficient to go to the jury if a rational juror could find guilt beyond a reasonable doubt. Conversely, if no rational juror could find guilt, then the case should not be submitted to the jury. Thus, we come to the ultimate point which divides this panel. It is not necessary that the government's evidence compel a finding of guilt, or negate every possible inference of innocence. *Wheeler v. United States*, 494 A.2d 170, 174 (D.C.1985). Under either formulation of the possession analysis, but particularly under the earlier test, I suggest that if the jury is allowed to perform its function, it is close, but it is difficult to hold that no rational juror could find guilt on these facts.

It has been intimated that what is lacking here is some specific manifestation of guilty knowledge, such as a furtive movement or an evasive action. I must observe that we have never held, nor should we, that circumstantial evidence must be particularized in that fashion. It seems inconsistent that a jury be permitted to infer constructive possession as a whole,[1] but not be allowed to infer its component elements.

Respectfully, I dissent.

---

**1.** *See, e.g., Brown, supra,* 546 A.2d at 395 (constructive possession of contraband based on evidence of joint criminal activity).