Devenn SMITH, Appellant,

Lavenski O. Drumgoole, Appellant,

v.

UNITED STATES, Appellee.

Nos. 03–CF–864, 03–CF–1012.

District of Columbia Court of Appeals.

Argued Sept. 13, 2005.
Decided May 25, 2006.

Jonathan W. Anderson, Public Defender Service, with whom James Klein and San-dra K. Levick, Public Defender Service, were on the brief, for appellant Smith.

Jonathan P. Willmott, appointed by the court, was on the brief for appellant Drumgoole.

Melissa M. Nasrah, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time, and Thomas J. Tourish, Jr., and Joseph W. Clark, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and RUIZ, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

■■■ A loaded pistol was found in the glove compartment of an automobile occupied by appellant Drumgoole, the driver, and appellant Smith, the front seat passenger. Both presented the defense of innocent presence but were convicted by a jury of the offense of carrying a pistol without a license.[1] The principal issue before the panel on this appeal is Smith's challenge to the sufficiency of the evidence to establish that he had the intent to exercise dominion and control over the pistol, a requisite of the offense. He cites us in particular to the en banc decision in *Rivas v. United States*, 783 A.2d 125 (D.C.2001) (en banc). We conclude that the evidence was sufficient and affirm both convictions.[2]

---

1. D.C.Code § 22–4504(a) (2001). Appellants were also convicted of the related offenses of possession of an unregistered firearm, § 7–2502.01, and unlawful possession of ammunition. § 7–2506.01(3).

2. Smith also challenges the trial court's refusal to sever his trial from that of Drumgoole. A trial court's denial of a motion to sever is reviewed for "a clear showing of abuse of discretion" and is reversed only upon appellant's showing that he suffered "manifest prejudice" by being tried jointly. *Dancy v. United States*, 745 A.2d 259, 266 (D.C.2000). Manifest prejudice does not result simply because each of the co-defendants blames the other for the charged conduct. *Id.* Indeed, appellants' defenses were not entirely conflicting and irreconcilable. Neither appellant directly blamed the other and the gun could have been the responsibility of a third party. *See Sousa v. United States*, 400 A.2d 1036, 1042 (D.C.) (finding that the co-defendants' defenses were not irreconcilable simply be-

## I.

We apply the oft-stated and well-settled standard for reviewing claims of insufficiency of evidence. "[W]e must view all the evidence in the light most favorable to the government and give deference to the right of the [fact finder] to weigh the evidence, determine the credibility of the witnesses, and draw all justifiable inferences of fact, making no distinction between direct and circumstantial evidence." *Earle v. United States,* 612 A.2d 1258, 1265 (D.C.1992). *See also Gordon v. United States,* 783 A.2d 575, 580 (D.C.2001) ("In reviewing sufficiency claims, we view the evidence and draw all inferences in the light most favorable to the government."); *Jones v. United States,* 716 A.2d 160, 162 (D.C.1998) ("When reviewing a challenge to the sufficiency of the evidence, we examine that evidence in the light most favorable to sustaining the verdict."). Moreover, and important here, the government's evidence need not "negate every possible inference of innocence" to be sufficient. *See Timberlake v. United States,* 758 A.2d 978, 980 (D.C.2000). "A court must deem the proof of guilt sufficient if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Rivas, supra,* 783 A.2d at 134 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)).

Where, as here, the issue is one of constructive possession, the government must show that the defendant (1) knew of the contraband's presence, and (2) had the ability and intent to exercise dominion and control over it. *Id.* at 129.[3] "Constructive possession may be sole or joint ... and may be proven by direct or circumstantial evidence." *Id.* (citations omitted). The prosecution must show that the defendant knew that the gun and ammunition were in the car and that "he had both the ability and the intent to exercise dominion or control over it." *Id.* We held in *Rivas* that mere proximity to exposed contraband within an automobile did not establish the requisite intent without "something more" in the way of evidence. *Id.* at 130. We described this "something more" as:

[S]ome action, some word, or some conduct that links the individual to the narcotics and indicates that he had some stake in them, some power over them. There must be something to prove that the individual was not merely an incidental bystander. It may be foolish to stand by when others are acting illegally, or to associate with those who have committed a crime. Such conduct or

cause the defendants admitted being present at the scene of the crime but denied participation in the criminal conduct), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979). *See also Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

Appellant Drumgoole's only argument on appeal is that the CPWL statute is unconstitutional because it unreasonably restricts an individual's right to bear arms as provided in the Second Amendment. He concedes that this panel is bound to follow the contrary decision in *Sandidge v. United States,* 520 A.2d 1057 (D.C.), *cert. denied,* 484 U.S. 868, 108 S.Ct. 193, 98 L.Ed.2d 145 (1987), and that he can obtain relief in that regard only from the en banc court.

3. In a trial for carrying a pistol without a license, the government's proof must go beyond the broader concept of constructive possession alone to "show that the pistol was in such proximity to the person as to be convenient of access and within reach." *White v. United States,* 714 A.2d 115, 119 (D.C.1998) (internal quotations and citations omitted). Smith does not contest that the government's proof here was sufficient in this regard.

association, however, *without more*, does not establish the offenses here charged. *Id.* (quoting *United States v. Pardo*, 204 U.S.App. D.C. 263, 277, 636 F.2d 535, 549 (1980) (emphasis in original)).

■ The types of conduct that could link a defendant to the contraband may include (but are not limited to): "evidence linking the accused to an ongoing criminal operation of which the possession is a part, attempts to hide or destroy evidence, other acts evincing consciousness of guilt such as flight, and evidence of prior possession of the contraband." *Id.* at 146 (Ruiz, J., concurring) (footnotes omitted). At least where the contraband is in plain view, we described the additional evidence necessary to prove the intent element of constructive possession as "comparatively minimal," *id.* at 137, and the same would be true where the element of knowledge cannot be significantly disputed.

## II.

We turn to the facts of the case now before us.[4] At approximately 4:30 p.m. on March 23, 2002, Metropolitan Police Officers Antoine and Griffin responded to a radio call reporting that four men were smoking marijuana in a tan-colored Lincoln Continental automobile parked in front of 803 Quintana Place, N.W. The officers arrived at that location in a marked police cruiser. Officer Antoine approached the driver's side of the automobile and knocked on the window where he observed appellant Drumgoole in the driver's seat. When Drumgoole responded to Officer Antoine's request to roll down the car window, Officer Antoine smelled a strong odor of marijuana coming from the vehicle. Officer Antoine called for additional back-up and when they arrived, he had Drumgoole step out of the car and sit on the curb at the rear of the vehicle.

In the interim, Officer Griffin walked to the passenger's side of the car where he observed appellant Smith sitting in a slouched position in the front passenger's seat with his knees against the car's glove compartment.[5] When Officer Antoine signaled to Officer Griffin that he smelled marijuana, Officer Griffin asked Smith to get out of the car. When the door to the car opened, Officer Griffin also smelled marijuana. Smith's left knee lost contact with the glove compartment as he got out of the car, and the glove compartment door fell open revealing a fully loaded .357 caliber revolver with a piece of tubing lying across the latch. The handle of the pistol was pointed towards the passenger seat while the muzzle was pointed towards the driver.

Before removing the pistol from the glove compartment, a crime scene technician photographed the pistol in its original location along with the piece of plastic tubing. A search of the vehicle did not reveal any drugs or drug paraphernalia but did uncover various documents containing Drumgoole's name. Drumgoole also admitted to the police officers at the scene that the car was his.

The government produced evidence that neither of the two appellants had a license to carry a firearm or had registered a firearm. The pistol was test-fired and found to be operable. Christian Pipe, an investigator for the Public Defender Service, testified that he determined, after viewing the car at the police impound lot,

---

4. After Smith presented his defense case, Drumgoole presented evidence in his defense. To avoid any issue whether it is proper to consider the latter's defense evidence in determining Smith's guilt, we do not do so and do not set it forth in this opinion.

5. It was noted at trial that Smith was tall, approximately six feet three inches.

that the latch on the glove compartment was functioning properly and that the glove compartment would not open even if he banged against it, apparently to impeach the officers' testimony that the door fell open as soon as Smith removed his knees. A videotape of the interior and exterior of the car, taken at the police impound lot, was shown, which portrayed the proper functioning of the latch.

### III.

■ The issue before us is whether these facts establish the "something more" necessary to support a finding that Smith constructively possessed the pistol and in particular whether it is sufficient to show that he possessed the requisite intent to "exercise dominion or control" over the weapon. We conclude that they do. Most markedly, Smith's slouched position with his knees holding shut the door to the glove compartment was an affirmative action in concealing the weapon, unlike the mere passive presence of the appellant in *Rivas*.

Smith does not rely on an assertion that the evidence was insufficient to show that he had knowledge of the pistol's location in the glove compartment.[6] Rather, he argues that his slouched position with his knees against the glove compartment could have simply reflected his six feet three inches of height and the inadequacy of space within the front seat to otherwise accommodate him. The jury, however, had the opportunity to view the videotape of all aspects of the four-door Lincoln Continental with its front bucket seats and to observe Smith's size. The jury also saw a photograph taken at the scene of the arrest of the glove compartment showing the tubing and the handle of the pistol pointing toward the passenger. The jury could

reasonably conclude that Smith kept his knees against the glove compartment to prevent the door from falling open into his lap and its contents revealed since the evidence showed that, absent the tubing, which apparently could be readily removed, the latch was in good working condition. This is quite enough to constitute the "comparatively minimal" additional evidence to prove intent.

Smith directs our attention to two other cases besides *Rivas* involving constructive possession of weapons located in automobiles where we held that there was insufficient evidence to demonstrate that the defendants intended to exercise dominion and control. In *Burnette v. United States*, 600 A.2d 1082, 1084 (D.C.1991), a gun was found bulging under the floormat in the rear of a car where the appellant had been sitting. We concluded that the fact that a passenger in a car could know about and have convenient access to a gun or other contraband that was not in plain view did not by itself sufficiently support an inference that the passenger had the intent to exercise control over the gun. *Id.* at 1085. Unlike the defendant in *Burnette* who did not have to be proactive to conceal the weapon underneath the floormat after it was placed there, Smith placed his knees up against the glove compartment which kept its door closed and the pistol hidden from view. The jury could reasonably infer that Smith's act of keeping his knees against the glove compartment was a conscious one to preserve the pistol's hiding place and thus provided a sufficient link to the weapon. *In re M.I.W.*, 667 A.2d 573 (D.C.1995), similarly involved a defendant in a back seat who may have known about a gun under the front seat of a car which extended less than an inch into his floor

---

**6.** Since the tubing prevented the door of the glove compartment from closing, Smith al-

most necessarily must have observed the pistol in this daylight hour.

space but who otherwise was not shown to have any connection with the weapon. Neither of these cases is controlling here.

Smith argues that the government asked the jury to make impermissible "inferences upon inferences" in deciding this case and, as such, the jury could not conclude beyond a reasonable doubt that Smith had the requisite intent to control the destiny of the pistol. We fail to see why this is so. As Judge Ruiz, concurring in *Rivas, supra,* stated "[t]he issue is not whether the jury may engage in inferential thinking; it may. The issue is whether the evidence is probative enough to permit the jury to make a required inference beyond a reasonable doubt." 783 A.2d at 149–50 n. 33. Here, the jury was not required to engage in any impermissible or cumulative speculation in determining that Smith was purposely holding the glove compartment door shut with his knees which kept the pistol hidden. His own witness testified that the glove-compartment latch worked perfectly when he tested it under normal operating conditions. A jury by using its own common sense could conclude that, regardless of who put it there, the rubber tubing kept the glove compartment from latching properly and that Smith elected to hold the door shut with his knees in order to conceal the pistol.

Accordingly, the judgments on appeal are

*Affirmed.*