Chacka **HUTCHINSON**, Appellant,

v.

**UNITED STATES, Appellee.**

No. 07–CF–198.

District of Columbia Court of Appeals.

Argued Feb. 28, 2008.

Decided March 20, 2008.

Jonathan P. Willmott, for appellant.

Leslie Ann Gerardo, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL, Associate Judge, and KERN and KING, Senior Judges.

FARRELL, Associate Judge:

In *Rivas v. United States*, 783 A.2d 125 (D.C.2001) (en banc), this court held that mere proximity to exposed contraband does not prove that "[a] passenger in someone else's car, who is not the driver and who does not have exclusive control over the vehicle or its contents," constructively possessed contraband within the car unless the prosecution shows "something more in the totality of the circumstances" indicating that "the accused meant to exercise dominion or control over the" forbidden object. *Id.* at 128, 130; *see Smith v. United States*, 899 A.2d 119, 121 (D.C. 2006). In this case, the prosecution did not establish that "something more," and because no other reason appears from the record why the holding of *Rivas* does not govern this case, we reverse with directions to enter appellant's acquittal of possession of cocaine.

## I.

Appellant was tried to the court on a misdemeanor information charging him with unlawful possession of cocaine retrieved from a car in which he had been the lone backseat passenger. Viewed in the light most favorable to the government, the evidence showed that on July 9, 2006, soon after midnight, two police officers observed a stationary car (a black

Mercedes Benz) in a no parking zone occupied by three men—a driver, a frontseat passenger, and appellant, who was seated in the back on the passenger side. As the officers approached the car, one of them (Kurtz) observed "lots of movement in the car, hand movement from the driver."[1] The occupants were ordered out of the car, and as appellant stepped out, Kurtz saw a blue ziplock bag and a small plastic vial on the floor board next to where his left foot had been, each later found to hold cocaine. Before appellant alighted, he had been "[j]ust sitting with both feet on the floorboard," but in such a way that Kurtz could not see the drugs until appellant got out of the car. Kurtz testified, variously, that appellant's foot had been "blocking [the officer's] view" of the drugs or "was completely covering" them, which prompted the trial judge to seek clarification. He asked Kurtz if the drugs had been "under [appellant's] foot," to which the officer replied: "The left side of his foot kind of blocked, you know. *It was like up against it so it's kind of blocking it.* As soon a[s] he] steps out you can see it l[y]ing there." (Emphasis added.) Appellant was arrested and charged with possession of the cocaine. The trial judge found appellant guilty, explaining only that he credited Kurtz's testimony.

## II.

As stated earlier, our decision in *Rivas, supra,* held that:

[a] passenger in someone else's car, who is not the driver and who does not have exclusive control over the vehicle or its contents, may not be convicted *solely* on the basis that drugs were in plain view and conveniently accessible in the passenger compartment. As in all

---

1. Specifically, "the driver had something ... cupped in his left hand ... next to his side like he was trying to hide ... or reach for

something." Kurtz did not testify that appellant had engaged in any similar "movement."

other constructive possession cases, there must be something more in the totality of the circumstances—a word or deed, a relationship or other probative factor—that, considered in conjunction with the evidence of proximity and knowledge, proves beyond a reasonable doubt that the passenger *intended* to exercise dominion or control over the drugs....

*Rivas,* 783 A.2d at 128 (emphasis in original). We described the required "something more" as:

[S]ome action, some word, or some conduct that links the individual to the narcotics and indicates that he had some stake in them, some power over them. There must be something to prove that the individual was not merely an incidental bystander. It may be foolish to stand by when others are acting illegally, or to associate with those who have committed a crime. Such conduct or association, however, *without more,* does not establish the offenses here charged.

*Id.* at 130 (quoting *United States v. Pardo,* 204 U.S.App. D.C. 263, 277, 636 F.2d 535, 549 (1980)) (emphasis by *Pardo* ).

■■■ Appellant argues that the evidence showed nothing more than his close proximity to drugs in an automobile he neither owned nor was driving. The government counters that it indeed proved "something more" than proximity, namely, "[a]ppellant's action in placing his foot over or against the drugs" in a manner fairly permitting an inference that he sought to "hid[e] this contraband from the view of the police" (Br. for Appellee at 10–11, 12).

If this were true—*i.e.,* if the evidence supported an inference beyond a reasonable doubt "that appellant sought to shield the drugs from the police" (*id.* at 13)—then the government would be correct, for the additional proof of intent required by *Rivas* is "comparatively minimal," *Rivas,* 783 A.2d at 137, and may consist of, for instance, "a furtive gesture indicating an attempt to ... hide ... [an] object." *Id.* But, measured by the standard of proof in criminal cases,[2] the evidence does not support the inference the government would allow a reasonable factfinder to draw. The sum total of appellant's "action" in this regard, as Officer Kurtz told the trial judge, was that his foot was "up against" the drugs in a way that blocked the officer's view of them in fact; no other evidence—no movement or gesture of appellant's, no words or nervous appearance—implied that he had placed his feet there purposely to block the officer's sight rather than as the only natural way to position them on entering the car. And, as in *Rivas,* no other evidence linked appellant to a common drug venture with the car's driver or frontseat passenger; nor was there evidence even of how long he had been a passenger in the car.[3] Thus, although it is reasonable to infer that appellant knew drugs lay on the floor next to his foot, the government's argument that he "had some stake in them" and was not "incidental[ly]" in their presence, *Pardo, supra,* boils down to an asserted reasonable inference that he would not have *kept* his feet next to them unless intending to conceal them from the officer's view. That action—or rather inaction (the failure to

---

2. As the court reiterated in *Rivas,* "We have an obligation to take seriously the requirement that the evidence in a criminal prosecution must be strong enough that a jury behaving rationally really could find it persuasive beyond a reasonable doubt." 783 A.2d at 134.

3. As in *Rivas,* "the evidence in this case ... has the quality of a snapshot—a frozen instant in time and space, crystallized but devoid of explanatory context." 783 A.2d at 134.

distance the drugs from his feet or his feet from them)—is even more equivocal as evidence of consciousness of guilt than was the conduct the court found too speculative to support an inference of culpable intent in *Rivas*, where the passenger affirmatively got out of the car and walked away as the police approached. *See* 783 A.2d at 136. In sum, the government's showing of the plus factor—the "something more"—required to prove appellant's intent to exercise dominion or control over the drugs failed as a matter of law.[4]

■ We have considered, too, a possible argument that *Rivas* does not apply to this case at all because appellant, unlike the accused in that case (who sat next to the driver more or less equidistant from the drugs in the center console) was the lone backseat passenger and thus arguably had "exclusive control" of drugs found in that area. *Id.* at 128. The prosecutor, however, barely alluded to this distinction in the trial court and, more importantly, elicited no testimony about the lack of ready access by the driver (or frontseat passenger) to drugs found on the rear floor near the center, a place not manifestly beyond reach from the front. In these circumstances, at least, any superior control appellant had over the drugs did not relieve the government of the need to show the additional evidence of intent that *Rivas* requires.

*Reversed.*

---

**4.** *Smith, supra,* relied on by the government, is a very different case. There the defendant had been "sitting in a slouched position in the front passenger's seat with his knees against the car's glove compartment." When his "left knee lost contact with the glove compartment as he got out of the car, ... the glove compartment door fell open revealing a fully loaded .357 caliber revolver with a piece of tubing lying across the [compartment] latch." *Smith,* 899 A.2d at 122. The jury, we held, "could reasonably conclude that Smith kept his knees against the glove compartment to prevent the door from falling open into his lap and its contents revealed since ... absent the tubing, which apparently could be readily removed, the latch was in good working condition." *Id.* at 123. Smith's affirmative efforts to hold the door shut and thus conceal the revolver have no parallel in the bare fact that appellant's feet were positioned next to the drugs.