# District of Columbia
# Court of Appeals

**No. 15-CM-554**

VINCENT PANNELL,

FILED

APR - 7 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

Appellant,

v.                                                                    **CMD-1870-15**

UNITED STATES,

Appellee.


On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: GLICKMAN and THOMPSON, *Associate Judges;* and FERREN, *Senior Judge*.


## J U D G M E N T

This case was submitted to the court on the transcript of record and the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the appellant's conviction is reversed, and the case is remanded for vacation of that judgment and for entry of a judgment of acquittal.

For the Court:


JULIO A. CASTILLO
Clerk of the Court

Dated: April 7, 2016.

Opinion by Senior Judge John M. Ferren.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CM-554

VINCENT PANNELL, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 4/7/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior
Court of the District of Columbia
(CMD-1870-15)

(Hon. Judith N. Macaluso, Trial Judge)

(Submitted March 15, 2016                    Decided April 7, 2016)

*Stephanie L. Johnson* was on the brief for appellant.

*Channing Phillips*, United States Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, *Stuart Allen*, and *Alyse I. Constantinide*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN, and THOMPSON, *Associate Judges*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*:  Following a bench trial on May 12, 2015, appellant, Vincent Pannell, was found guilty of possession of phencyclidine (PCP), in violation of D.C. Code § 48-904.01(d) (2012 Repl.), a misdemeanor. On the same day, the trial court sentenced appellant to forty-five days of imprisonment,

execution of sentence suspended, and supervised probation for nine months. Appellant contends that there was insufficient evidence at trial to support his conviction. In particular, he asserts that the government did not prove beyond a reasonable doubt that appellant had actual or constructive possession of the PCP found in the car in which he was a passenger. For the reasons elaborated below, we agree with appellant, reverse his conviction, and remand for vacation of that judgment and for entry of a judgment of acquittal.

## I.

The government presented evidence that on January 25, 2015, at approximately 12:44 a.m. Metropolitan Police Department Officers Jeremy Kniseley and Andre Parker were on patrol in a marked vehicle, with Parker driving and Kniseley in the front passenger seat. As they pulled out of a gas station, they turned onto Alabama Avenue, Southeast, a few car lengths behind a white Cadillac. The officers could see the silhouettes of two occupants in the car, neither of whom was making any hand motion or gesture. About 20 seconds later, the officers saw the white Cadillac drive through a stop sign without coming to a complete stop. Officer Parker then activated the emergency equipment on his vehicle, which included a spotlight allowing the officers to see more clearly into

the Cadillac. Again, neither officer observed either of the occupants making a hand motion or gesture.

About ten seconds after the emergency equipment was activated, both cars came to a stop. The patrol car had pulled up behind the Cadillac, and both officers got out, with Parker approaching the driver's side of the Cadillac and Kniseley approaching the passenger's side. As Kniseley came upon the Cadillac, he could "smell a pretty strong odor that [he] recognized to be PCP." He went to the passenger side window, which was partially down, while Parker approached the driver's side window and asked the driver for his license, registration, and insurance. Neither officer observed either occupant make a hand motion other than to retrieve documents from the glove compartment and the driver's identification from his back pocket. The documents established that appellant did not own the Cadillac.

Officer Kniseley asked the passenger to step out of the car, at which point the officer noticed "what appeared . . . to be a white cigarette, in the gap between the . . . left edge of the seat and the center console." Kniseley identified the cigarette as a "dipper," a cigarette dipped in PCP. The cigarette was "approximately two [to] three inches to the left of [appellant's left] mid-thigh."

When appellant stepped out of the car, Kniseley "could tell that the smell was still localized to the car and not . . . actually on the passenger that was sitting there."

Kniseley conducted a search of the interior compartment of the Cadillac, noting that the dipper was "extremely wet" and discovering that a "second dipper . . . was a little bit further down in the edge of the seat." Based on how wet the dippers were, Kniseley estimated that they had been dipped in liquid PCP "within the past five to ten minutes at most." There were no burn marks on either of the cigarettes, which indicated that they had not yet been smoked. During the stop and search of the vehicle, appellant "was cooperative and polite[;] . . . there was nothing about him that seemed excited or anxious."

Officer Kniseley arrested appellant and searched him incident to the arrest. No PCP was found on appellant's person. The driver was patted down but never searched by either officer; he was given a ticket for running the stop sign. The defense presented no evidence at trial.

**I.**

In reviewing a challenge to sufficiency of the evidence, this court views the evidence in the light most favorable to the government, "giving full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[1]  If the evidence "is such that a reasonable [factfinder] *must* have a reasonable doubt as to the existence of any of the essential elements of the crime, then the evidence is insufficient."[2]

In order to prove constructive possession, the government was required to show that appellant "knew that the [PCP] was present in the car and that he had both the ability and the intent to exercise dominion or control over it."[3] Constructive possession "may be proven by direct or circumstantial evidence."[4] The evidence at trial was sufficient to show, and appellant does not dispute on

---

[1] *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[2] *Id*. (citation and internal quotation marks omitted).

[3] *Id*. at 129.

[4] *Id.*

6

appeal, that appellant knew PCP was in the car, given its "strong chemical odor that's somewhat overwhelming." Nor does appellant dispute the trial court's finding that he had the ability to exercise dominion or control over the PCP cigarettes, given their close proximity to him in the passenger seat. The question thus becomes whether a reasonable factfinder could have found, beyond a reasonable doubt, that appellant also had the intent to exercise control over the PCP-laced cigarettes.

## III.

In *Rivas*,[5] this court considered a situation remarkably similar to the one before us now. Police officers pulled up behind a Honda automobile, stopped in the middle of the street. There was a driver (identified as the vehicle's owner), as well as a front seat passenger, the appellant Rivas. (Two other individuals were in the rear seats.) Rivas got out of the car "[s]econds later" to speak with someone on the sidewalk nearby, leaving the front passenger door open.[6] The car then pulled over to the curb, whereupon the police activated their emergency lights, moved in behind the parked car, and, after ordering the occupants out of the car, saw "two

---

[5] See *supra* note 1.

[6] *Rivas*, 783 A.2d at 128.

plastic bags containing a visible white rock substance [later shown to be crack cocaine] in the console between the two front seats."[7]  Rivas, who by then had moved around the corner to speak with someone else, was soon arrested.  No evidence was available to show how long Rivas had been inside the Honda, or what he or others in the car had been doing.  There was no fingerprint evidence that Rivas had handled the cocaine bags, or any evidence that he had ever engaged in a drug transaction.  Nor was any incriminating evidence found on Rivas's person.  Nor, finally, did Rivas say anything to inculpate himself.[8]

A jury convicted Rivas and the driver of possession with intent to distribute cocaine, and a division of this court affirmed.  Sitting en banc, however, this court reversed, concluding — as to facts fitting this case — that "[a] passenger in someone else's car, who is not the driver and who does not have exclusive control over the vehicle or its contents, may not be convicted *solely* on the basis that the drugs were in plain view and conveniently accessible in the passenger compartment."[9]  We held that "something more . . . — a word or deed, a relationship or other probative factor —" was required to "prove[] beyond a

---

[7] *Id.* at 129.

[8] *Id.*

[9] *Id.* at 128.

reasonable doubt that the passenger *intended* to exercise dominion or control over the drugs, and was not a mere bystander."[10] The "something more" that is required, however, is "comparatively minimal":[11]

> [I]t could be a furtive gesture indicating an attempt to access, hide or dispose of the object, flight or other evidence of consciousness of guilt, evidence of participation in an ongoing criminal venture involving the contraband, an inculpatory statement, evidence of prior possession of the item, actual possession of paraphernalia relating to the use or sale of the contraband, control of the area or container in which the contraband is found, or the like.[12]

From time to time this court has reaffirmed *Rivas*,[13] characterizing that decision and others that lack evidence sufficient to prove intent as having "the quality of a

---

[10] *Id.*

[11] *Id.* at 137.

[12] *Id.*

[13] *E.g.*, *Hutchinson v. United States*, 944 A.2d 491, 492-93 (D.C. 2008) (cocaine found on floor of car blocked by defendant's feet, without "something more," insufficient to infer intent); *Jackson v. United States*, 61 A.3d 1218, 1223-24 (D.C. 2013) (cooler with marijuana found on floorboard next to defendant insufficient, without "something more," to infer intent); *see also Burnette v. United States*, 600 A.2d 1082, 1083 (D.C. 1991) (per curiam) (gun found bulging under floormat by defendant's feet in rear passenger compartment did not evidence proactive behavior by defendant).

snapshot — a frozen instant in time and space, crystalized but devoid of explanatory context."[14]

Although the "something more" requirement announced in *Rivas* to establish intent will be satisfied by something "minimal," that "something" has commonly been an affirmative act by the defendant to conceal the contraband. For example, in our *Smith* decision,[15] the defendant, a passenger, sat in a "slouched position with his knees holding shut the [loose] door to the glove compartment" containing a pistol — evidence of a "conscious [act] to preserve the pistol's hiding place."[16] Similarly, in *Zanders*,[17] the defendant "pick[ed] up and drop[ped] a jacket onto the floorboard [of the car], briefly concealing the gun" — an "affirmative act" reflecting intent akin to acts in other relevant decisions affirming constructive possession.[18]

---

[14] *Rivas*, 783 A.2d at 134.

[15] *Smith v. United States*, 899 A.2d 119 (D.C. 2006).

[16] 899 A.2d at 123.

[17] *Zanders v. United States*, 75 A.3d 244 (D.C. 2013).

[18] *Id.* at 251 (citing *Smith*, 899 A.2d at 123 (knees holding glove compartment shut to conceal gun); *Williams v. United States*, 884 A.2d 587, 604

(continued . . .)

The foregoing decisions, illustrating "something more" based on "movement or gesture in front of the police,"[19] leave room, of course, for other indicia of intent, as illustrated above in the block quotation from *Rivas*.[20] This case carries us into alleged indicia of intent other than overt movement or gesture.

## IV.

The government's overall argument that the record reflects "something more," sufficient to evidence intent beyond a reasonable doubt, is premised on several evidentiary contentions. As the predicate for its argument, the government emphasizes that the two PCP-laced cigarettes were found on appellant's side of the console, merely a few inches from his thigh. Accordingly, says the government, they were "more accessible to appellant" than to the driver and thus are distinguishable from the drugs in *Rivas*, which lay equally between driver and passenger. The government recognizes, however, that this minor discrepancy is

_____

(. . . continued)
(D.C. 2005) (knocking bag of chips to floor to conceal gun); *White v. United States*, 714 A. 2d 115, 119 (D.C. 1998) (reaching into box that concealed firearm).

[19] *Zanders*, 75 A.3d at 250 (citation and internal quotation marks omitted).

[20] See text accompanying *supra* note 12.

not, in itself, the "something more" required to prove culpable intent.[21]  Thus, the government proffers three other factors.

First, we are told, the top cigarette was bent, allegedly suggesting that appellant had hastily attempted to hide it from the police officers.  Again, however, this government contention is based entirely on appellant's proximity to the PCP cigarette; for all one can tell without more, that cigarette as likely as not was bent before the traffic stop, not in response to it.  Both officers repeatedly testified that they had not seen either the driver or appellant make any motion or gesture at any time before or after the stop that would have suggested an attempt to conceal the cigarettes.[22]  All the government can say, therefore, is that appellant "could have easily . . . slid [the drugs] without detection" to the console between appellant and the driver.  Perhaps so.  But, at least equally so, perhaps not.  Perhaps the driver or someone else put the cigarettes there.  And, in any event, merely sliding the two

---

[21]  We have said that a "defendant's close proximity to drugs in plain view is certainly probative" of intent, as well as knowledge and ability, to exert control over the contraband. *Rivas*, 783 A.2d at 128. But to repeat from *Rivas*, that proximity alone to drugs in plain view is not the required "something more," particularly, as we have observed, when the defendant is a "passenger in someone else's car, who is not the driver and who does not have exclusive control over the vehicle or its contents." *Id.*

[22]  *Rivas*, 783 A.2d at 137 (no evidence that appellant made "furtive gesture indicating an attempt to access, hide or dispose of the" cigarettes).

cigarettes does not fit very well with the government's contention that appellant had acted "hastily" and "bent" one.

Next, the government contends that appellant's intent to exercise dominion or control over the PCP-laced cigarettes — if not inferable from close proximity and cigarette bending — may be reasonably inferred by adding the incontrovertible evidence that both cigarettes were wet and apparently had been dipped "very recently" in the PCP solution, likely five to ten minutes before the police intervened. This dipping activity, argues the government, suggests an intention to smoke the cigarettes "imminently" (and thus allegedly implicates appellant's "participation in an ongoing criminal venture").[23] While close proximity of a bent, wet, PCP-dipped cigarette does not easily disturb characterization of the scene as a "snapshot," it does stir the imagination of activity to the point of a nonfrivolous argument.

The problem with this argument, however, is its material omissions: even if the cigarettes had been in the car for at least five to ten minutes before the traffic stop, no evidence suggests with meaningful clarity how, and more importantly by

---

[23] See text accompanying *supra* note 12.

whom, the cigarettes had been dipped and placed there — an omission of evidence germane to appellant's relationship to the cigarettes (aside from sitting next to them). The evidence at trial, as noted, demonstrated that the cigarettes had likely been dipped in PCP "five to ten minutes" before the vehicle was stopped and, further, that PCP-dipped cigarettes "remain extremely wet for . . . [approximately] 10 to 15 minutes"; that they must be dried before they are smoked; and that it takes at least 30 minutes for a PCP cigarette to dry. There was no evidence, however, as to whether appellant had been "actively engaged in,"[24] or even privy to, the dipping or, for any other reason, was poised for "imminent usage" of the cigarettes. Furthermore, no vial or other container that could have held liquid PCP and perhaps implicated appellant was found in the car or on appellant's person, despite the fact that the cigarettes had been recently dipped. Nor was the driver ever searched to determine whether he might have dipped the cigarettes. Finally, of particular significance, the police officers had only observed appellant for thirty seconds before conducting the stop. No evidence was presented to show how long appellant had been in the car, how he had come to be there, or what he had been doing earlier[25] — questions relevant to appellant's alleged culpability for

---

[24] *Rivas*, 783 A.2d at 134.

[25] *Rivas*, 783 A.2d at 134 ("[T]here was no evidence as to how long Rivas had been in the car, how he had come to be there, or what he had been doing");

(continued . . .)

possession of PCP as a passenger in the vehicle. Certainly the cigarette dipping, drying, and front-seat stashing — short of smoking — generates the vision of a criminal chemist at work, but what's missing is evidence that appellant participated in that venture. We accept the reasonable inference of a possibility, or even probability, that appellant did so, but not an inference, as required, beyond a reasonable doubt.[26]

Taking up the government's third and last factor, we cannot say that "something more" was finally established by the argument that, because there were two cigarettes and two occupants of the car, "it was rational to infer that each man intended to smoke one of the PCP-dipped cigarettes" — especially, adds the government, because the front passenger window was rolled down. We have no basis, however, for inferring (beyond mere possibility) that of the two cigarettes in the car, one was allocable to each occupant, and that appellant and the driver

_____

(. . . continued)
*Hutchinson*, 944 A.2d at 493 ("nor was there evidence even of how long [Hutchinson] had been a passenger in the car"); *Jackson*, 61 A.3d at 1223 ("There is no evidence indicating how long Mr. Jackson had been in the car, how he had come to be there, or what he was doing there.") (citation and internal quotation marks omitted).

[26] *Rivas*, 783 A.2d at 134 ("evidence is insufficient" if a factfinder "*must* have a reasonable doubt as to the existence of any of the essential elements of the crime"); *see id*. at 138 ("perhaps Rivas is *probably* guilty; but on the thin record of this case, a reasonable doubt about his guilt ineluctably remains").

intended to smoke one apiece, while together. Nor can we infer significance from an open car window, which is hardly atypical. Accordingly, this two-smoker argument is a stretch. The evidence as easily suggests that both cigarettes belonged to the driver — or to appellant — but not that they more likely belonged to one than to the other, and certainly not necessarily to appellant,[27] especially in the absence of any evidence that appellant "had ever handled the [cigarettes] or engaged in a drug transaction."[28] This argument does not add a sufficient gloss on the facts of the first two scenarios proffered by the government to demonstrate the required "intent" beyond a reasonable doubt to hold appellant criminally responsible for possession of PCP.

Finally, the government's case is further weakened by the fact that appellant in all respects cooperated with the police, did not appear anxious, and manifested

---

[27] We have acknowledged that "[c]onstructive possession may be sole or joint," *In re R.G.*, 917 A.2d 643, 647 (D.C. 2007) (internal citation and quotation marks omitted), but the evidence as to each must be proved. In *In re R.G.*, for example, a pistol was recovered in appellant's bedroom, but we reversed appellant's conviction for missing "intent" because her "boyfriend was in the room, and indeed in the bed, with [appellant], and the District offered no evidence . . . that it was not the boyfriend who owned the pistol and who brought it to [appellant's] room." *Id.* at 649.

[28] *Rivas*, 783 A.2d at 129.

no evidence of conscious guilt.[29]  In sum, this case is indistinguishable from the facts and law in *Rivas*.  The evidence presented, without more, cannot support the inferences the government seeks to have us draw; it would require the factfinder "to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation."[30]

*****

For the reasons elaborated above, appellant's conviction is reversed and the case remanded for vacation of that judgment and for entry of a judgment of acquittal.

*So ordered.*

---

[29] *See id.* at 650 ("There was no evasive action by R.G., or other evidence of consciousness of guilt on her part.").

[30] *Id.* at 134 (citation and internal quotation marks omitted).